**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 19-22917-CIV-LENARD/O'SULLIVAN

**ROBERT McFEE,**

> Plaintiff,

**v.**

**CARNIVAL CORPORATION,**

> Defendant.
> _____/

## ORDER GRANTING DEFENDANT CARNIVAL CORPORATION'S RENEWED MOTION TO DISMISS (D.E. 26)

**THIS CAUSE** is before the Court on Defendant Carnival Corporation's Renewed Motion to Dismiss, ("Motion," D.E. 26), filed October 10, 2019. Plaintiff Robert McFee filed a Response on November 6, 2019, ("Response," D.E. 30), to which Defendant filed a Reply on November 13, 2019, ("Reply," D.E. 31). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background

### a.    Factual allegations[1]

In September 2018, Plaintiff embarked on a cruise aboard the Carnival *Pride* ("the ship"). (Am. Compl. ¶ 10.) On September 21, 2018, while travelling on a bus to a shore excursion in the Bahamas, Plaintiff suffered a stroke and requested immediate medical

---

[1]    The following facts are gleaned from Plaintiff's First Amended Complaint, (D.E. 24), and are deemed to be true for purposes of ruling on Carnival's Motion.

attention.  (Id. ¶ 11.)  The bus drove Plaintiff back to the ship, but when Plaintiff arrived at the ship's medical center with clear and visible stroke symptoms, the ship's physician advised that Plaintiff needed to disembark and seek medical attention at a medical facility in the Bahamas.  (Id.)  The ship's physician advised that Plaintiff required a CT scan and assessment by a neurologist.  (Id.)

Plaintiff had suffered strokes in the past.  (Id. ¶ 355.)  Therefore, when Plaintiff's family was booking his cruise over the phone with Defendant's agent, they asked the agent if Defendant would ensure that Plaintiff would be adequately treated if he suffered another stroke, and if Defendant would fly him back to the United States for medical treatment if he was unable to be treated on the ship.  (Id.)  Defendant's agent responded by offering them a traveler's insurance policy and said that if they purchased it, Defendant would ensure that Plaintiff would be adequately treated if he suffered a stroke, and that he would be flown back to the United States for medical treatment if he was unable to be treated on the ship.  (Id.)  In reliance on these representations, Plaintiff decided to go on the subject cruise and to purchase this traveler's insurance policy.  (Id.)

After suffering the stroke in the Bahamas and being told by the ship's medical staff that they could not treat him, Plaintiff presented the traveler's insurance policy and requested to be flown back to the United States.  (Id. ¶ 12.)  Defendant denied Plaintiff's request to be flown to the United States and instead took Plaintiff to a medical facility in Freeport, Bahamas.  (Id. ¶ 14.)  The medical facility in Freeport did not have a neurologist, equipment to perform a CT scan, or the medicine Plaintiff needed—including a medicine called "tPA" that had been effective in treating previous strokes Plaintiff had suffered.  (Id.)

2

Plaintiff was advised that he needed to return to the ship for further assistance. (Id.) However, Plaintiff was unable to re-board the ship because it was already leaving the port when he returned to it. (Id. ¶ 15.) Consequently, Plaintiff's family had to book a commercial flight to the United States so Plaintiff could be treated at an adequate medical facility. (Id. ¶ 16.) According to the Complaint, the delay in treatment caused Plaintiff injuries, or aggravated his injuries, including loss of memory and vision, "as well as permanent impairment." (Id.)

**b.    Procedural history**

On July 15, 2019, Plaintiff filed the initial Complaint in this case which contained six causes of action:

- Count I: Negligence, (D.E. 1 ¶¶ 17-24);

- Count II: Vicarious liability for the negligence of the ship's medical staff, (id. ¶¶ 25-48);

- Count III: Apparent agency for the acts of the ship's medical staff, (id. ¶¶ 49-57);

- Count IV: Assumption of duty – negligence of the ship's medical staff, (id. ¶¶ 58-73);

- Count V: Non-delegable duty to provide reasonable medical care, (id. ¶¶ 74-87); and

- Count VI: Fraud, (id. ¶¶ 88-102).

Defendant moved to dismiss Counts I, V, and VI for failure to state a claim upon which relief can be granted. (D.E. 8)

On September 16, 2019, the Court entered an Order granting the Motion to Dismiss, Striking Counts I, II, III, and IV, and dismissing without prejudice Counts V and VI. ("Dismissal Order," D.E. 18.)  First, the Court found that Counts I through IV constituted "shotgun" pleadings in that they each "commit[] the sin of not separating into a different count each cause of action or claim for relief."  (Dismissal Order at 9 (quoting Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015)).)  Specifically, Count I alleged at least eight different ways in which Defendant breached its duty of care, (see id. at 8); Count II alleged at least sixteen different ways in which the ship's medical staff breached its duty of care, (id. at 11 & n.2); Count III alleged at least twelve different ways in which the ship's medical staff breached its duty of care, (id. at 13 & n.3); and Count IV alleged at least sixteen different ways in which Defendant and/or the ship's medical staff breached their duties of care, (id. at 14 & n.4).  The Court struck these claims with leave to replead "consistent with federal pleading standards and to the extent that the claims are supported by specific factual allegations."  (Id. at 13, 14, 16.)

As to Count V, the Court adopted Judge Moreno's position in Sexton v. Carnival Corp., Case Number: 18-20629-CIV-MORENO, 2018 WL 3405246, at *3 (S.D. Fla. July 10, 2018), finding that maritime law does not impose a "Non-Delegable Duty to Provide Reasonable Medical Care."  (Id. at 16-17.)

As to Count VI, the Court found that Plaintiff's fraud by omission claim was properly understood as a fraud by commission (i.e., fraudulent inducement) claim, and dismissed the claim without prejudice for being based on an incorrect legal theory.  (Id. at 22-23.)

4

On September 30, 2019, Plaintiff filed the operative First Amended Complaint which is fifty-eight pages in length, contains 366 paragraphs and the following nineteen causes of action:

- Count I: Assumption of Duty (Negligent hiring and/or retention);

- Count II: Assumption of Duty (Negligent supervision and/or training);

- Count III: Assumption of Duty (Failure to adequately warn);

- Count IV: Assumption of Duty (Failure to adequately warn regarding licensing);

- Count V: Assumption of Duty (Failure to adequately warn regarding treatment);

- Count VI: Assumption of Duty (Leaving port without adequately following up);

- Count VII: Assumption of Duty (Inadequately suppling [sic] and/or treating in regards to Defendant's medical center);

- Count VIII: Assumption of Duty (Failing to medevac and/or to arrange for Plaintiff to be promptly taken back to the United States to receive the treatment he needed);

- Count IX: Vicarious Liability for the Negligence of the Ship's Medical Staff (Failure to adequately examine, diagnose, and/or treat Plaintiff's injuries);

- Count X: Vicarious Liability for the Negligence of the Ship's Medical Staff (Failure to take proper and timely measures to secure adequate treatment for Plaintiff);

- Count XI: Vicarious Liability for the Negligence of the Ship's Medical Staff (Failure to adequately escort Plaintiff and/or follow up with Plaintiff to ensure that he received reasonable medical care);

- Count XII: Vicarious Liability for the Negligence of the Ship's Medical Staff (Failure to give Plaintiff proper discharge instructions);

- Count XIII: Vicarious Liability for the Negligence of the Ship's Medical Staff (Failure to medevac Plaintiff and/or to arrange for Plaintiff to be promptly taken back to the United States to receive the treatment he needed);

- <u>Count XIV</u>: Apparent Agency Against Defendant for the Acts of the Ship's Medical Staff (Failure to adequately examine, diagnose, and/or treat Plaintiff's injuries);

- <u>Count XV</u>: Apparent Agency Against Defendant for the Acts of the Ship's Medical Staff (Failure to take proper and timely measures to secure adequate treatment for Plaintiff);

- <u>Count XVI</u>: Apparent Agency Against Defendant for the Acts of the Ship's Medical Staff (Failure to adequately escort Plaintiff and/or follow up with Plaintiff to ensure that he received reasonable medical care);

- <u>Count XVII</u>: Apparent Agency Against Defendant for the Acts of the Ship's Medical Staff (Failure to give Plaintiff proper discharge instructions);

- <u>Count XVIII</u>: Apparent Agency Against Defendant for the Acts of the Ship's Medical Staff (Failure to medevac Plaintiff and/or arrange for Plaintiff to be promptly taken back to the United States to receive treatment he needed); and

- <u>Count XIX</u>: Fraud.

(D.E. 24.)  Defendant generally moves to dismiss the entire Amended Complaint as beyond the scope of what the Court envisioned when it granted Plaintiff leave to replead, (Mot. at 2, 4), for failing to support the legal claims with factual allegations, (<u>id.</u> at 4), and because it does not provide a short and plain statement of Plaintiff's claims, (<u>see</u> <u>id.</u>; <u>see also</u> Reply at 2).  Defendant also specifically moves to dismiss Counts I, II, III, IV, V, VI, and XIX. (Mot. at 5-11.)

## II.    Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).

6

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449, 132 S. Ct. 1702, 1706 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2)

where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

Fraud claims are subject to a heightened pleading standard: "A party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

## III.    Applicable Law

"Federal maritime law applies to actions arising from alleged torts 'committed aboard a ship sailing in navigable waters.'" Smolnikar v. Royal Caribbean Cruises Ltd., 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1321 (11th Cir. 1989)). It also applies to tort actions arising at an offshore location during the course of a cruise. Ceithami v. Celebrity Cruises, Inc., 739 F. App'x 546, 550 n.4 (11th Cir. 2018) (citing Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 900-02 (11th Cir. 2004)).

> General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864–65, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). See also Brockington v. Certified Elec., Inc., 903 F.2d 1523, 1530 (11th Cir. 1990). In the absence of well-developed

> maritime law pertaining to [Plaintiff's] negligence claims, [the Court] will incorporate general common law principles and Florida state law to the extent they do not conflict with federal maritime law.  See Just v. Chambers, 312 U.S. 383, 388, 61 S. Ct. 687, 85 L. Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation.").  See also Becker v. Poling Transp. Corp., 356 F.3d 381, 388 (2nd Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular"); Wells v. Liddy, 186 F.3d 505, 525 (4th Cir. 1999) (in the absence of a well-defined body of maritime law relating to a particular claim, the general maritime law may be supplemented by either state law or general common law principles).

Smolnikar, 787 F. Supp. 2d at 1315; see also Hesterly v. Royal Caribbean Cruises, Ltd., 515 F. Supp. 2d 1278, 1282 (S.D. Fla. 2007).

## IV.    Discussion

Eighteen of the nineteen causes of action assert various theories of negligence.  "To plead negligence in a maritime case, 'a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.'"  Franza v. Royal Caribbean Cruises, Ltd., 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012)).

Defendant generally moves to dismiss the entire Amended Complaint as beyond the scope of what the Court envisioned when it granted Plaintiff leave to replead, (Mot. at 2, 4), for failing to support the legal claims with factual allegations, (id. at 4), and because it does not provide a short and plain statement of Plaintiff's claims, (see id.; see also Reply

at 2).  Defendant also specifically moves to dismiss Counts I, II, III, IV, V, VI, and XIX.

(Mot. at 5-11.)  The Court will limit its discussion to the counts Defendant specifically

challenges.

> **a.    Count I: Assumption of Duty (Negligent hiring and/or retention)**

Count I asserts a claim for negligent hiring or retention under an "assumption of

duty" theory.[2]  (Am. Compl. at 3.)

"To state a claim for negligent selection or hiring under Florida law, Plaintiff must

allege (1) that an employee . . . was incompetent or unfit to perform the work provided; (2)

that Defendant knew [or] reasonably should have known of the particular incompetence or

unfitness; and (3) that the competence or unfitness proximately caused the injuries."

Kennedy v. Carnival Corp., 385 F. Supp. 3d 1302, 1334 (S.D. Fla. 2019) (citing Smolnikar,

787 F. Supp. 2d at 1318).  "To meet the second element, a plaintiff must allege sufficient

facts showing that the employer was on notice of the harmful propensities of the person

hired or retained."  Id. (citing Witover v. Celebrity Cruises, Inc., 161 F. Supp. 3d 1139,

1148 (S.D. Fla. 2016)).

"The principal difference between negligent hiring and negligent retention as a basis

for employer liability is the time at which the employer is charged with knowledge of the

employee's unfitness."  Mumford v. Carnival Corp., 7 F. Supp. 3d 1243, 1249 (S.D. Fla.

---

[2]    "Federal courts have recognized that the 'assumption of duty' doctrine, as set forth in § 323 of the Second Restatement of Torts, 'is applicable in maritime cases.'"  Sexton v. Carnival Corp., Case Number: 18-20629-CIV-MORENO, 2018 WL 3405246, at *2 *(S.D. Fla. July 12, 2018) (citing Dunaway v. United States, No. Civ.A. 98–2035, 2000 WL 64291, at *3 (E.D. La. Jan. 26, 2000) (citing Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955))).

2014) (citing <u>Stires v. Carnival Corp.</u>, 243 F. Supp. 2d 1313, 1318 (M.D. Fla. 2002) (quoting <u>Garcia v. Duffy</u>, 492 So. 2d 435, 438 (Fla. Dist. Ct. App. 1986))).  Negligent hiring occurs when, "prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background."  <u>Id.</u> (citing <u>Williams v. Feather Sound, Inc.</u>, 386 So. 2d 1238 (Fla. Dist. Ct. App. 1980)).  Liability for negligent retention "occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment."  <u>Malicki v. Doe</u>, 814 So.2d 347, 362 n. 15 (Fla. 2002)).

The Court first finds that Count I is an impermissible "shotgun" pleading because it asserts two separate causes of action in a single count.  Liability for negligent hiring and negligent retention require different findings—specifically, when the employer knew or should have known of the employee's unfitness.  Thus, a jury could find Defendant liable for negligent hiring <u>or</u> negligent retention <u>or</u> both, so pleading them in a single count would present a verdict form issue that is easily resolved by requiring plaintiff to replead them in separate counts.  <u>Wagner v. First Horizon Pharm. Corp.</u>, 464 F.3d 1273, 1280 (11th Cir. 2006) (concluding that when a district court finds a complaint constitutes a shotgun pleading the proper remedy is to order repleading).

The Court further finds that Count I fails to comply with Rule 8(a)(2) and (d)(1) of the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  The claim must be

supported by factual allegations showing that the claim is "plausible on its face." Sinaltrainal, 578 F.3d at 1260 (citing Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 561-62, 570). Rule 8(d)(1) requires those allegations to be "simple, concise, and direct." However, they cannot be conclusory. Iqbal, 556 U.S. at 678.

Here, the claim contained in Count I is not "short and plain," Fed. R. Civ. P. 8(a)(2), and the allegations are not "simple, concise, and direct," Fed. R. Civ. P. 8 (d)(1). Rather, Count I contains twenty-three vague, conclusory, and often long-winded paragraphs spanning five pages, and cross-references numerous other allegations spanning many more pages contained elsewhere in the Amended Complaint. (See id. ¶¶ 17-39.) To quote Judge Ungaro: "There is nothing short or plain about this behemoth." Shapiro v. Unum Life Ins. Co. of Am., Case No. 17-cv-23992-UU, 2017 WL 10379581, at *1 (Nov. 29, 2017) (dismissing seven count, 341 paragraph complaint for failure to comply with the federal pleading standards). Consequently, it must be replead.

The Court further finds that aside from being verbose and confusing, Count I does not allege sufficient factual matter to allow the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. Rather, it vaguely alleges that: (1) every doctor, nurse, and other member of the ship's medical staff was "dangerous, incompetent, unqualified, and/or liable to do harm[,]" (Am. Compl. ¶ 22); (2) Defendant "knew or should have known that the ship's doctors, nurses, and medical staff were dangerous and incompetent and liable to do harm to its passengers[,]" (id. ¶ 28), and (3) because the ship's medical staff was incompetent, Defendant suffered damages, (see id. ¶¶ 34-37). Significantly, the Amended Complaint does not allege any facts "showing that the

employer was on notice of the harmful propensities of the person hired or retained."

Kennedy, 385 F. Supp. 2d at 1334.  Rather, it ambiguously alleges, for example, that

> 29. Defendant failed to conduct a reasonable investigation regarding the competence of the ship's doctors, nurse, and medical staff to be employed as staff for Defendant's medical center, including failing to adequately evaluate its physicians', nurses', and other medical personnel's performance during their tenure with Carnival, including, but not limited to, by failing to properly review and/or analyze their success record in how often they were able to adequately treat patients' injuries, and failing to adequately discipline and/or terminate their employment when their success record was inadequate and/or improper.

> 30. Likewise, Defendant failed to ensure that the physicians, nurses, and other medical personnel it hired understood the standard of care for emergency physicians, including, but not limited to, the need to send Plaintiff to a proper medical facility that could adequately treat him, giving proper discharge instructions, and ensuring that Plaintiff was receiving the treatment he needed before the ship left port.

> 31.    Both prior to and during the course of employment of said doctors, nurses, and medical staff, Defendant became aware or should have become aware of problems with said doctors, nurses, and medical staff that indicated their unfitness and/or predisposition to committing errors such as those outlined by Plaintiff in Paragraphs 11-15, 103, 114, 127, 151, 176, 201, 225, 249, 270, 289, 308, 326, and 344 of his complaint, for reasons that include, but are not limited to, that said doctors, nurses, and medical staff previously committed errors that included, but are not limited to, such errors, Defendant received complaints of their incompetence, and/or they did not have adequate training, qualifications, or experience for treating strokes and/or stroke symptoms, which indicated their unfitness and/or predisposition to committing errors, but Defendant failed to take further action such as investigating, discharging, or reassignment.

(Am. Compl. ¶ 31.)

In Gharfeh v. Carnival Corp., 309 F. Supp. 3d 1317, 1332-33 (S.D. Fla. 2018), Judge

Goodman found very similar allegations to be insufficient under federal pleading

standards.  In that case, the plaintiff asserted a claim against Carnival for negligent hiring,

retention, monitoring, and training.  Id. at 1331-32.  The amended complaint alleged that

Carnival: "knew or should have known to investigate Dr. Carvajal's educational credentials

and training . . . including [her] prior employment with other cruise lines and medical

providers as well as educational credentials and recent training"; "knew or should have

known of [ ] Dr. Carvajal's unfitness to provide adequate medical care to its shipboard

passengers"; and

> The shipboard physician and medical staff did not have the mental
> temperament and analytical abilities and did not have sufficient knowledge
> and training to properly diagnose or to create a reasonable and appropriate
> plan for urgent or emergent care and treatment including evacuation of the
> patient and getting the Plaintiff to a medical center on an expedited basis
> appropriate for urgent or emergent care.

Id. at 1332.  Judge Goodman found these allegations were devoid of factual content and,

therefore, failed to state a claim:

> For all practical purposes, Plaintiff has done little more than assert fact-free,
> wholly conclusory, boilerplate allegations that Carnival knew or should have
> known about certain alleged deficiencies in the training and performance of
> the doctor and her medical staff. Plaintiff has failed to allege "**facts** that are
> suggestive enough to render each element of his claim for negligent hiring,
> retention and training plausible."

Id. (quoting Doe v. NCL (Bahamas) Ltd., Case No.: 1:16-cv-23733-UU, 2016 WL

6330587, at *3 (S.D. Fla. Oct. 27, 2016) (quoting Summers v. Carnival Corp., No. 13-

23932-CV, 2015 WL 11983231m, at *6 (S.D. Fla. Apr. 6, 2015))).  As such, Judge

Goodman dismissed the claim without prejudice.  Id. ("The Court will not predict whether

Gharfeh can adequately state a claim for negligent hiring, retention, training, and

supervision with specific facts plausible enough to demonstrate the viability of the theory.

But I will give him 14 days to file another amended pleading.  He will need to allege facts,

14

not merely labels and boilerplate conclusions."). See also Franza v. Royal Caribbean Cruises, Ltd., 948 F. Supp. 2d 1327, 1334 (S.D. Fla. 2013) (dismissing negligent hiring or retention claim for failure to plead facts), rev'd on other grounds 772 F.3d 1225 (11th Cir. 2014).

The Court finds that Count I suffers from the same inadequacies as the negligent hiring, retention, monitoring, and training claim in Gharfeh, and therefore it must suffer the same fate. If Plaintiff wishes to reassert a claim for negligent hiring and/or negligent retention, it must be "short and plain," Fed. R. Civ. P. 8(a)(2), and be supported by "simple, concise, and direct" factual allegations, Fed. R. Civ. P. 8(d)(1), showing that the claim is "plausible on its face." Sinaltrainal, 578 F.3d at 1260 (citing Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 561-62, 570).

### b.    Count II: Assumption of Duty (Negligent supervision and/or training)

Count II asserts a claim for negligent supervision and/or training under an "assumption of duty" theory. (See Am. Compl. at 7.) "Negligent supervision 'occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.'" Doe, 2016 WL 6330587, at *4 (quoting Cruz v. Advance Stores Co., 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012)). "Accordingly, Plaintiff 'must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or

take corrective action such as discharge or reassignment.'" Id. (quoting Cruz, 842 F. Supp. 2d at 1359).[3]

"Negligent training occurs when an employer 'was negligent in the implementation or operation of the training program' and this negligence caused a plaintiff's injury." Doe, 2016 WL 6330587, at *4 (citing Cruz v. Advance Stores Co., 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012); Gutman v. Quest Diagnostics Clinical Labs., Inc., 707 F. Supp. 2d 1327, 1332 (S.D. Fla. 2010); Wynn v. City of Lakeland, 727 F. Supp. 2d 1309, 1317 (M.D. Fla. 2010)).

As an initial matter, the Court finds that Count II contains two separate causes of action and, therefore, is an impermissible "shotgun" pleading. See Weiland, 792 F.3d at 1322-23 ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). Because claims for negligent supervision and negligent training contain different elements, they are separate causes of action that must be pled separately. If Count II survived to trial in its current form, it would be impossible to instruct the jury on the two separate theories contained in a single count. For this reason, the Court strikes Count II with leave to replead.

---

[3]    The Court rejects Defendant's argument that under maritime law there is no duty to train or supervise the ship's medical staff. Although this Court has previously found that "a carrier owes no duty to train shipboard medical staff," see Mumford, 7 F. Supp. 3d at 1248 (citations omitted), Eleventh Circuit's decision in Franza changed the legal landscape for cruise carrier liability and, apparently, has cleared the way for maritime negligent supervision and negligent training claims. See Gharfeh v. Carnival Corp., 309 F. Supp. 3d 1317, 1332 (S.D. Fla. 2018) (rejecting Carnival's argument "that, as a matter of law, a cruise passenger can never allege a direct liability claim against a cruise operator for negligent hiring, retention, monitoring, and training of its ship's doctors and medical staff"); Doe, 2016 WL 6330587, at *3-4.

Alternatively, the Court finds that Count II must be dismissed for failure to comply with federal pleading standards.  Much like Count I, the claim contained in Count II is not "short and plain," Fed. R. Civ. P. 8(a)(2), and the allegations are not "simple, concise, and direct," Fed. R. Civ. P. 8 (d)(1).  Rather, Count II contains twenty-two vague, conclusory, and often long-winded paragraphs spanning four pages, and cross-references numerous other allegations spanning many more pages contained elsewhere in the Amended Complaint.  (See id. ¶¶ 40-61.)

The Court further finds that aside from containing two separate causes of action and being verbose and confusing, Count II does not allege sufficient factual matter to allow the Court to draw the reasonable inference that Defendant is liable for negligent supervision. In this regard, Count II vaguely alleges that "Defendant negligently knew or should have known that the ship's doctors, nurses, and medical staff were dangerous and incompetent and liable to do harm to its passengers."  (Id. ¶ 51.)  It further vaguely alleges that

> [b]ecause Defendant elected to hire medical personnel to treat its passengers on its ships, it owed a duty to Plaintiff and its passengers to properly supervise and train these medical personnel to adequately conduct examinations, conduct evaluations, treat, and make arrangements for proper treatment for passengers suffering from strokes and stroke symptoms.

(Id. ¶ 50.)  It further vaguely alleges that

> Defendant, through its officers, managers, recruiters, vessel, and/or other agents, employees, staff, crew, and/or representatives, who were acting in the course and scope of their employment and/or agency with Carnival, breached the duty of reasonable care owed to the Plaintiff and was negligent through negligently supervising and/or training its physicians, nurses, and/or other medical personnel, whom Defendant knew or should have known were dangerous, incompetent, unqualified, and/or liable to do harm.

(Id. ¶ 45; see also id. ¶ 55 ("Defendant breached its duty of care to Plaintiff by failing to provide its doctors, nurses, and medical staff with proper supervision and/or training to adequately conduct examinations, conduct evaluations, treat, and make arrangements for proper treatment for passengers suffering from strokes and stroke symptoms.")  It further vaguely alleges that

> Defendant failed to conduct a reasonable investigation regarding the competence of the ship's doctors, nurse, and medical staff to be employed as staff for Defendant's medical center, including failing to adequately evaluate its physicians', nurses', and other medical personnel's performance during their tenure with Carnival, including, but not limited to, by failing to properly review and/or analyze their success record in how often they were able to adequately treat patients' injuries, and failing to adequately discipline and/or terminate their employment when their success record was inadequate and/or improper.

(Id. ¶ 52.)  Finally, it alleges that "[a]s a proximate result, Defendant's medical staff did not have the 'tPA', medicine, and/or other means to properly treat Plaintiff, and Plaintiff did not receive the treatment he needed within a reasonable amount of time, and was forced to take a private flight to obtain the treatment he needed."  (Id. ¶ 56; see also id. ¶ 57 ("Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.").  The Court finds that the Amended Complaint simply fails to plead facts alleging that Defendant (1) received actual or constructive notice of an employee's unfitness and (2) failed to investigate or take corrective action.  See Doe, 2016 WL 6330587, at *4 ("Plaintiff fails to state a claim for negligent supervision because she fails to allege that Defendant: (1) had actual or

constructive notice of the bartender's or any other crewmember's unfitness; and (2) failed to take corrective action in light of its knowledge.").

On the other hand, the Court finds that if properly pled, Count II <u>may</u> contain enough factual matter to plausibly allege a claim for negligent training.  For example, it alleges that Defendant knew that its passengers had previously suffered strokes on its cruises and, therefore, it was foreseeable that it might happen again, (<u>id.</u> ¶ 46 (citing <u>Sexton</u>, 2018 WL 3405246, at *1)); Defendant breached its duty of reasonable care by failing to train its medical staff "to adequately conduct examinations, conduct evaluations, treat, and make arrangements for proper treatment for passengers suffering from strokes and stroke symptoms[,]" (<u>id.</u> ¶ 55); Defendant's failure to train its staff resulted in the ship's medical staff not having the medicine (e.g., "tPA") or the means (e.g., CT scanning equipment) to adequately treat Plaintiff when he suffered a stroke, (<u>id.</u> ¶ 56); and as a result of Defendant's failure to train, Plaintiff's treatment was significantly delayed and Plaintiff "suffered severe bodily injury resulting in pain and suffering" and other damages, (<u>id.</u> ¶¶ 58-69.)

Regardless, as currently pled, Count II violates federal pleading standards and must be stricken (or, alternatively, dismissed).  If Plaintiff chooses to replead his negligent supervision and/or negligent training claim, it must be "short and plain," Fed. R. Civ. P. 8(a)(2), and be supported by "simple, concise, and direct" <u>factual</u> allegations, Fed. R. Civ. P. 8(d)(1), showing that the claim is "plausible on its face."  <u>Sinaltrainal</u>, 578 F.3d at 1260 (citing <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 561-62, 570).

### c.      Count III: Assumption of Duty (Failure to adequately warn)

Count III asserts a claim for negligent failure to warn under an "assumption of duty" theory.  (See Am. Compl. at 11.)  Specifically, Plaintiff alleges that Defendant failed "to adequately warn Plaintiff that its physicians, nurses, and other medical personnel were dangerous, incompetent, unqualified, and/or liable to do harm," and cites to eighteen other allegations from elsewhere in the Amended Complaint identifying allegedly negligent acts. (Am. Compl. ¶ 67.)

Defendant argues that such a cause of action does not exist: "There is no case law authority for the proposition that staffing the ship with dangerous, incompetent medical staff is acceptable so long as there is a warning."  (Mot. at 26.)  Plaintiff argues that "[i]n essence Plaintiff's failure to warn theory centers on Defendant's failure to warn him that the ship did not have proper medicine such as the 'tPA' medicine to treat him."  (Resp. at 8.)

Even construed in the light most favorable to Plaintiff, Count III simply does not allege that Defendant is liable to Plaintiff for failing to warn him that the ship did not have proper medicine—"tPA" or otherwise—to treat passengers suffering from a stroke. Because that is what Plaintiff has intended to allege in Count III, it must be dismissed for failure to state a claim.

Defendant argues that even "[a]side from the obtuse pleading," the assumption of duty doctrine from the Restatement (Second) of Torts applies only to the negligent performance of services gratuitously taken, and not to the common law tort of negligent

failure to warn.  (Reply at 5.)  Section 323 of the Restatement (Second) of Torts is titled

"Negligent Performance of Undertaking to Render Services" and provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).  Although this section is applicable in

maritime cases, see Sexton, 2018 WL 3405246, at *2, the Parties have not cited, and the

Court has not identified, any prior maritime negligence cases applying the assumption of

duty doctrine to the duty to warn.

In fact, it appears that the Florida state courts have only recognized a voluntarily

assumed duty to warn in one context.  Specifically, in Sanderson v. Eckerd Corp., the

Florida Court of Appeals found that where a pharmacist advertises that its computer system

will detect and warn customers of adverse drug reactions and interactions, but the

pharmacist fails to do so, a plaintiff may have a cause of action against the pharmacist for

breaching a duty he or she voluntarily assumed.  780 So. 2d 930, 933-34 (Fla. Dist. Ct.

App. 2001).

In any event, the Court is not prepared to conclude, as Defendant argues it should,

that under maritime law a shipowner can never voluntarily assume a duty to warn its

passengers.  It is sufficient in this instance to find that Count III fails to allege that

Defendant assumed a duty to warn Plaintiff that the ship did not have tPA or other medicines to treat passengers suffering from a stroke.

If Plaintiff chooses to replead this failure to warn claim, it must be "short and plain," Fed. R. Civ. P. 8(a)(2), and be supported by "simple, concise, and direct" factual allegations, Fed. R. Civ. P. 8(d)(1), showing that the claim is "plausible on its face." Sinaltrainal, 578 F.3d at 1260 (citing Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 561-62, 570).

### d.   Count IV: Assumption of Duty (Failure to adequately warn regarding licensing)

Count IV also asserts a claim for negligent failure to warn under an "assumption of duty" theory.  (See Am. Compl. at 13.)  Specifically, Plaintiff asserts that Defendant failed "to adequately warn Plaintiff that its physicians, nurses, and other medical personnel did not have proper licenses to practice medicine and/or nursing, including, but not limited to, such licenses to practice medicine and/or nursing in the United States of America[.]"  (Id. ¶ 79.)

Defendant argues that "[t]here is no requirement that medical staff be licensed in the United States, in any specific state, or in the jurisdiction of the flag of the ship."  (Mot. at 8 (citing Rinker v. Carnival Corp., 753 F. Supp. 2d 1237, 1242 (S.D. Fla. 2010)).)  As such, it argues that there can be no duty to warn that the medical staff lacks such licenses. (Id.)  Plaintiff argues that Defendant again "misunderstands Plaintiff's allegations":

> Plaintiff did not state that the only way it was negligent in this regard was by failing to have its physicians licensed in the United States.  Plaintiff alleged broadly that Defendant's medical staff were nor [sic] properly licensed in general, and Plaintiff's reference to the United States was not intended to

imply that only medical licenses in the United States were valid.  In this regard, Defendant does have a duty to ensure that their medical staff are adequately licensed.  Hunt v. Gualtieri, No. 8:16-CV-509-T-33AAS, 2016 WL 7034412, at *7 (M.D. Fla. Dec. 2, 2016) ("Hunt alleges that Sheriff Gualtieri's medical staff, including Nurse Cruz, breached the standard of care for similar health care professionals in numerous ways, including among others: '**by failing to insure that its physicians . . . were licensed**[.]' . . . Hunt's claims for ordinary negligence and medical negligence against Sheriff Gualtieri survive the motion to dismiss stage.") (emphasis added).  However, Defendant did have a duty to warn Plaintiff that its doctors were not licensed in the U.S., since a jury may well find that this was a reasonable expectation of a passenger sailing from the U.S. and that Defendant had a duty to at least let its passengers know that its doctors had no such licensing.

(Resp. at 8-9.)  In its Reply, Defendant argues that its failure to understand what Plaintiff is attempting to allege in Count IV shows that it is inadequately pled.  (Reply at 6.)  It further argues that because it does not have a duty to employ medical staff licensed in the United States, there is no duty to warn passengers that its medical staff is not licensed in the United States.  (Id.)

A shipowner's duty is one of "ordinary reasonable care under the circumstances." Keefe, 867 F.2d at 1322.  "[T]he cases uniformly hold that a carrier, when hiring a doctor for its passengers' convenience, must choose a doctor who is competent and duly qualified. To the extent that a carrier negligently hires an incompetent doctor, therefore, the carrier has not discharged its duty to its sick and injured passengers."  Barbetta v. S/S Bermuda Star, 848 F.2d 1364, 1371-72 (5th Cir. 1988) (emphasis added).[4]  See also Mumford v. Carnival Corp., 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014).

---

[4]     There were two major issues in Barbetta: (1) whether the shipowner could be vicariously liable for the negligence of the ship's doctor; and (2) whether the shipowner was directly negligent for hiring an incompetent doctor.  848 F.2d at 1368.  With respect to the first issue, the Fifth Circuit held as a matter of law that a shipowner cannot be vicariously liable for the

In Barbetta, the Fifth Circuit explicitly rejected the argument that a shipowner breaches its duty of ordinary care when it fails to hire a doctor who is licensed in the United States. 848 F.2d at 1372. In that case, the plaintiff alleged that she suffered damages when the shipboard doctor failed to diagnose her with diabetes. 848 F.2d at 1366. She claimed, inter alia, that the shipowner breached its duty of care by hiring an incompetent doctor. Id. The summary judgment[5] evidence showed:

> The doctor had obtained a doctor of medicine degree from the Universitas Sancti Thomae in the Philippines in 1962, and became certified to practice medicine in the Philippines after passing his Medical Boards Examination Test. While a practicing physician, the doctor attended six different post-graduate seminars on a variety of medical topics. He worked in Manila as company physician for BF Goodrich Corp. from 1963 to 1964, served as a medical officer in the armed forces of the Philippines from 1965 to 1976, worked as part of the medical staff for the United States' VA clinic in Manila from 1976 to 1983, worked in Japan as company physician for Kubota Construction Co. from 1983 to 1984, and was assistant chief of hospital staff at Medicare Community Hospital and Health Center in General Tinio from 1984 until he was hired by Bahama Cruise in 1985. For his performance during his service with the Philippines' military, the doctor was twice decorated; for his performance during his employment with the VA clinic in Manila, the doctor received several letters of recommendation from his superiors.

Id. at 1372. The plaintiff argued that the evidence raised an issue of fact regarding the shipowner's negligence, asserting that "when a carrier hires a doctor who cannot practice medicine in the United States, it commits 'actionable negligence.'" Id. The Fifth Circuit rejected the argument: "we have found neither case support nor statutory support for the

---

negligence of the ship's medical staff. 848 F.2d at 1372. In Franza, the Eleventh Circuit rejected Barebetta's holding as to the vicarious liability issue only. 772 F.3d at 1238.

    [5]    The defendant did not move to dismiss the plaintiff's complaint. Barbetta, 848 F.2d at 1366.

[plaintiff's] argument that a passenger ship which serves—among others—American

passengers must, if it employs a doctor, employ one who is qualified to practice medicine

in the United States." <u>Id.</u>  It continued:

> Given the lack of support for their position, the [plaintiff is] really asking us to do two things: (1) hold, for the first time and as a matter of public policy, that alien doctors who meet the qualifications for admission to practice medicine in the United States are the only doctors who are obviously competent to treat American passengers aboard ship and, therefore, that (2) if a ship elects to hire an alien doctor who, although qualified to practice elsewhere, has not gained admittance to practice in the United States, the doctor's competency and the ship's negligence in hiring that doctor are automatically in issue. We see no reason to do either, especially in this situation.  The [plaintiff] point[s] to nothing about the Philippines' system of qualifying doctors which suggests that the doctor's education should have caused defendants to question the doctor's competency. They point to nothing in the doctor's record which suggests that the doctor's work experience should have caused defendants to question the doctor's competency.  In the face of these undisputed credentials which show that the doctor practiced medicine in the Philippines for over twenty years, we are unwilling to say that a fact question on either the doctor's competence or Bahama Cruise's negligence arises simply because the doctor apparently did not obtain admission into the United States to practice medicine.

<u>Id.</u>  Accordingly, the Fifth Circuit affirmed summary judgment in favor of the shipowner.

<u>Id.</u> at 1374.

Although <u>Barbetta</u> was decided on summary judgment, the rule that a shipowner

owes no duty to employ medical personnel licensed in any particular jurisdiction has been

applied in this District at the motion to dismiss stage.  See <u>Rinker</u>, 753 F. Supp. 2d at 1242-

43.  In <u>Rinker</u>, the plaintiff alleged that Carnival was negligent because "the medical

personnel aboard the ship were not licensed in California or in the jurisdiction of the flag

of the ship." <u>Id.</u> at 1242.  Judge Seitz dismissed this claim, observing:

> General Maritime Law applies in this case and Maritime Law does not require that Carnival hire medical personnel who are licensed in California or in the jurisdiction of the flag of the ship. Maritime Law simply requires that if Carnival chooses to hire medical personnel, it must hire people that are competent and qualified.   See Barbetta, 848 F.2d at 1371.   Thus, Plaintiff's negligence claims based on an alleged duty to hire medical personnel licensed in California or the jurisdiction of the flag of the ship are dismissed because no such duty exists.

Id. at 1242-43; see also Mumford, 7 F. Supp. 3d at 1250 ("Plaintiff's negligence claims based on an alleged duty to hire and retain medical personnel licensed in the jurisdiction of the flag of the ship are dismissed because no such duty exists.").

Here, Count IV alleges that Defendant breached its duty of reasonable care under the circumstances by "failing to adequately warn Plaintiff that its physicians, nurses, and other medical personnel did not have proper licenses to practice medicine and/or nursing, including, but not limited to, such licenses to practice medicine and/or nursing in the United States of America[.]"  (Am. Compl. ¶ 79.)  Because Defendant did not owe a duty to its passengers to hire medical personnel licensed in the United States, it did not owe a duty to warn Plaintiff that its medical staff was not licensed in the United States.  To the extent that Count IV alleges a breach of such a duty, it is dismissed.

Plaintiff, however, argues that Count IV more broadly alleges that Defendant's medical staff was not "properly licensed in general," and that Defendant does have a duty to ensure that the medical staff is properly licensed.  (Resp. at 8 (citing Hunt, 2016 WL 7034412, at *7).)  Plaintiff's reliance on Hunt is misleading—in that case, the complaint explicitly alleged that the Pinellas County jail contracted with a third-party company named "Maxim" "to provide fully licensed and skilled on-call physicians to provide

medical care to the inmates at the Pinellas County Jail[,]" and that the on-call physician on the night in question "was never licensed to practice for [Maxim], [Sheriff Gualtieri] or at the Pinellas County Jail." 2016 WL 7034412, at *1. It is unclear whether the court found this claim to be actionable. See id. at *7 (finding only that the plaintiff "has properly stated a claim that at least some actions of Sheriff Gualtieri's medical staff fell below their professional standard of care") (emphasis added).

Regardless, the Court finds that Defendant owed Plaintiff a duty to hire competent and duly qualified medical personnel. Barbetta, 848 F.2d at 1372; Mumford, 7 F. Supp. 3d at 1249; Rinker, 753 F. Supp. 2d at 1242. If it breaches this duty, it is liable for negligent hiring. See Kennedy v. Carnival Corp., 385 F. Supp. 3d at 1334 (citing Smolnikar, 787 F. Supp. 2d at 1318). Construed in the light most favorable to Plaintiff, Count IV alleges that Defendant's medical personnel was incompetent because it was unlicensed, (Am. Compl. ¶ 68), and that Defendant assumed a duty and breached a duty to warn Plaintiff that its medical staff was unlicensed and, therefore, incompetent, (see id. ¶ 79). This necessarily implies that Defendant may hire incompetent medical personnel so long as it warns its passengers that its medical personnel is incompetent. That is absurd. If Defendant hires an incompetent medical staff that proximately causes damage to a passenger, then Defendant is directly liable to the passenger for its own negligence. A shipowner does not owe a duty to warn passengers that it negligently hired its medical staff. Count IV is dismissed.

### e.    Count V: Assumption of Duty (Failure to adequately warn regarding treatment)

Count V also asserts a claim for negligent failure to warn under an "assumption of

duty" theory.  (<u>See</u> Am. Compl. at 15.)  Specifically, it alleges that Defendant

> breached the duty of reasonable care owed to the Plaintiff and was negligent
> by failing to adequately warn Plaintiff that it was unable to ensure that
> Plaintiff would be promptly taken care of if he suffered another stroke, and
> by failing to adequately warn Plaintiff that it was unable to ensure that it
> would fly him back to the United States for medical treatment if he was
> unable to be treated on the ship, and that he would instead more likely be at
> the mercy of a medical facility at the closest port-of-call, and that Defendant
> could not ensure that he would receive the medical treatment he needed at
> any such medical facility.

(Am. Compl. ¶ 91.)  Defendant argues that, as with Counts III and IV, Count V attempts

to assert a "negligence by omission" claim by imposing a duty to warn that does not exist.

(Mot. at 9.)  In his Response, Plaintiff

> refers [the Court] to his arguments as to Count III . . . and again reiterates
> that if Defendant elected not to have tPA medicine on its ship, at the very
> least, the jury should be able to decide whether Defendant was negligent for
> not warning Plaintiff that it might not able [sic] to adequately treat him if he
> had a stroke.

(Resp. at 9.)  In its Reply, Defendant maintains that there is no legal basis for imposing

such a duty on a shipowner, and Plaintiff cited no legal authority for such a duty.  (Reply

at 6-7.)

Once again, "the benchmark against which a shipowner's behavior must be

measured is ordinary reasonable care under the circumstances . . . ."  <u>Keefe</u>, 867 F.2d at

1322; <u>see also</u> <u>Chaparro</u>, 693 F.3d at 1336.  The duty to warn recognized by the maritime

negligence cases is the "duty to warn passengers of dangers of which the carrier knows or

should know, but which may not be apparent to a reasonable passenger." <u>Lugo v. Carnival Corp.</u>, 154 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015) (quoting <u>Poole v. Carnival Corp.</u>, No. 14-20237-CIV, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015)).  This includes "a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." <u>Chaparro</u>, 693 F.3d at 1336.

Count V alleges that Defendant breached its duty of care in four ways—specifically, by failing to warn Plaintiff that (1) "it was unable to ensure that Plaintiff would be promptly taken care of if he suffered another stroke," (2) "it was unable to ensure that it would fly him back to the United States for medical treatment if he was unable to be treated on the ship," (3) "that he would instead more likely be at the mercy of a medical facility at the closest port-of-call," and (4) "that Defendant could not ensure that he would receive the medical treatment he needed at any such medical facility." (Am. Compl. ¶ 91.)

Initially, the Court finds that Count V is an impermissible "shotgun" pleading in that it "commits the sin of not separating into a different count each cause of action or claim for relief." <u>Weiland</u>, 792 F.3d at 1323.  As the Court warned Plaintiff in its Dismissal Order, each alleged breach of the duty of care is a separate claim which must be pled separately. (D.E. 18 at 9-10 (citing <u>Thanas v. Royal Caribbean Cruises Ltd.</u>, Civil Action No. 19-21392-Civ-Scola, 2019 WL 1755510, at *2 (S.D. Fla. Apr. 19, 2019) (striking maritime negligence claim where "[t]hrough a single 'negligence' count, [the plaintiff] asserts, without limitation, theories of liability for failure to investigate, failure to instruct, failure to warn, and negligent retention. These are separate causes of action that must be asserted independently and with supporting factual allegations."); <u>Kercher v. Carnival</u>

Corp., Civil Action No. 19-21467-Civ-Scola, 2019 WL 1723565, at *1 (S.D. Fla. Apr. 18, 2019) (same); Gharfeh v. Carnival Corp., CASE NO. 17-20499-CIV-GOODMAN, 2018 WL 501270, at *6 (S.D. Fla. Jan. 22, 2018) (finding that single count which commingled claims of vicarious liability with allegations of direct negligence constituted an impermissible shotgun pleading); Kulakowski v. Royal Caribbean Cruises, Ltd., CASE NO. 16-21375-CIV-KING, 2017 WL 237642, at *2 (S.D. Fla. Jan. 18, 2017) (dismissing maritime negligence claim that "runs afoul of federal pleading requirements by including nineteen separate alleged breaches of the duty of care in a single count for negligence and by failing to allege facts to support the vast majority of the alleged breaches"); Brown v. Carnival Corp., 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (finding that "[s]imply alleging that Carnival owed Plaintiff a duty of 'reasonable care' in a conclusory fashion, while also pleading [forty-one] alleged breaches that purport to impose a heightened duty upon Carnival, is not sufficient to state a valid negligence claim under maritime law," and advising that "the burden will remain on Plaintiff to review her Complaint and ensure that each factual allegation is supported by law and plausible facts, and is alleged in good faith");   Flaherty v. Royal Caribbean Cruises, Ltd., CASE NO. 15–22295–CIV–LENARD/GOODMAN, 2015 WL 8227674, at *5 (S.D. Fla. Dec. 7, 2015) (dismissing maritime negligence claim as an impermissible shotgun pleading because, inter alia, it contained multiple causes of action in the same Count); Richards v. Carnival Corp., No. 14–23212–Civ, 2015 WL 1810622, at *3 (S.D. Fla. Apr. 21, 2015) (finding that the complaint's "laundry list of allegations does not comport with the applicable standards under federal maritime law"); Garcia v. Carnival Corp., 838 F. Supp. 2d 1334, 1337 & n.2

(S.D. Fla. 2012) (dismissing maritime negligence claim that "epitomizes a form of 'shotgun' pleading,'" where the plaintiff alleged that Defendant owed a duty of "reasonable care under the circumstances," and then "proceed[ed] to allege at least twenty-one ways in which Defendant breached this duty"); <u>Gayou v. Celebrity Cruises, Inc.</u>, No. 11–23359– Civ, 2012 WL 2049431, at *5-6 & n.2 (S.D. Fla. June 5, 2012) (ordering plaintiff to amend complaint to "separately allege an independent count" for various theories of liability that were lumped into a single maritime negligence claim)); <u>see also</u> Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").)  When a plaintiff files a shotgun complaint, a district court is required to <u>sua sponte</u> order repleading pursuant to Federal Rule of Civil Procedure 12(e).  <u>Wagner</u>, 464 F.3d at 1280.

Regardless, the Court finds that maritime law does not impose the first three duties to warn that Plaintiff asserts in Paragraph 91.  See <u>DeRoche v. Commodore Cruise Line, Ltd.</u>, 46 Cal. Rptr. 2d 468, 473 (Cal. Ct. App. 1994) ("We further see no duty to warn that ship medical facilities would not be available to passengers injured off-ship.").

As to the fourth duty to warn Plaintiff asserts in Paragraph 91, the Court finds that while Defendant's duty to warn passengers of dangers of which it knows or should know encompasses the duty to warn that a port of debarkation has substandard medical facilities, <u>id.</u> at 472, the Amended Complaint alleges no facts that Defendant knew or should have known that Freeport, Bahamas had substandard medical facilities, <u>id.</u>

In <u>DeRoche</u>, a cruise passenger was injured during a shore excursion in Cozumel, Mexico.  <u>Id.</u> at 470.  The plaintiff was given first aid at a local clinic and then transferred

to a larger clinic.  Id.  One of the plaintiff's companions contacted the ship's staff, but the staff took no action.  Id.  The next morning, one of the plaintiff's companions sought the aid of the ship's doctor who accompanied the companion to the Cozumel medical clinic. Id.  The ship's doctor did not perform an independent medical examination but recommended that the plaintiff undergo the surgery proposed by the Cozumel clinic.  Id. The ship's doctor returned to the ship, and later that day the ship departed Cozumel, leaving the plaintiff behind.  Id.  The plaintiff claimed that he received substandard surgery in Cozumel which caused him damages.  Id.  He filed a lawsuit alleging, inter alia, that the shipowner breached its duty to "provide medical facilities and treatment which [the plaintiff] was entitled to expect and which they should have known would not be available on Cozumel" and  that the travel agency who issued his ticket failed to "warn [the plaintiff] of dangers and hazards, and of the lack of adequate medical facilities on the cruise[.]"  Id.

The trial court issued an order sustaining a demurrer without leave to amend,[6] and the plaintiff appealed.  Id.  The plaintiff argued, inter alia, that the shipowner's "duty of care required it to warn him that the ship's doctor might not be able, or might simply refuse, to treat him for serious injuries and that he might be left in the care of local physicians." Id. at 471.  The court of appeals rejected these arguments, finding that the shipowner and the other defendants did not owe the plaintiff most of the duties alleged in the complaint. Id. at 472-73.  However, it further found that the case law supported the argument that the

---

[6]    A "demurrer" is "[a] pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer."  Black's Law Dictionary 526 (10th ed. 2014).

shipowner owed a duty to warn its passengers of the allegedly substandard medical care available in Cozumel because it fell within the duty to warn of known, unreasonable risks or dangers.  Id. (discussing Tradewind Transp. Co. v. Taylor, 267 F.2d 185 (9th Cir. 1959); Metzger v. Italian Line, 1976 A.M.C. 453 (S.D.N.Y. 1975); Carlisle v. Ulysses Line Ltd., S.A., 475 So. 2d 248 (Fla. 1985)).  It concluded, however, that the plaintiff had

> alleged no facts from which it might be concluded that Commodore had knowledge of any unreasonable risk posed by the state of Cozumel's medical care facilities. Indeed, there is nothing from which it might be believed that Commodore was in any position to judge the quality of medical care available in Cozumel or anywhere else. It follows that no facts were alleged supporting a duty to warn.

Id. at 473.

Here, too, the Amended Complaint alleges no facts from which it can be plausibly concluded that Defendant knew or should have known that the medical facility in Freeport, Bahamas was incapable of treating a person suffering from a stroke.  Rather, it contains only the conclusory, boilerplate assertion that "Defendant knew or should have known that Defendant could not ensure that [Plaintiff] would receive the medical treatment he needed at" a medical facility in the closest port-of-call.  (Am. Compl. ¶ 92.)  Accordingly, Count V must be dismissed without prejudice.

### f.      Count VI: Assumption of Duty (Leaving port without adequately following up)

Count VI alleges that Defendant assumed a duty to follow up with Plaintiff to make sure he was receiving adequate medical care in Freeport, Bahamas, and that it breached this duty when it left port without following up on him.  (Am. Compl. at 17.)

33

Defendant argues that a shipowner does not owe any duty to make sure a passenger being treated on shore is being adequately treated before the ship can leave port.  (Mot. at 9.)  Plaintiff argues that Defendant assumed a duty to follow up when it took him to the medical facility in Freeport: "By taking Plaintiff to the medical facility, a jury is certainly entitled to find that Defendant assumed a duty to make sure he was receiving adequate treatment before stranding him without any further support." (Resp. at 9-10.)  In its Reply, Defendant argues that "[t]aking a passenger for treatment is not an assumption of any duty whatsoever with respect to subsequent events.  There are no allegations of fact that Carnival undertook a duty to follow up and failed to use reasonable care in doing so."  (Reply at 7 (citing Gharfeh, 309 F. Supp. 3d at 1327).)

Once again, "the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition . . . ." Keefe, 867 F.2d at 1322; see also Chaparro, 693 F.3d at 1336.  Under the Restatement's "assumption of duty" doctrine:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> > (a) his failure to exercise such care increases the risk of such harm, or
> > (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

34

Plaintiff has not cited, and the Court has not identified, any case law holding that a shipboard doctor who directs a passenger to seek medical care on shore thereby assumes a duty to ensure that the passenger receives adequate medical care on shore. Assuming arguendo that such a duty could arise, Plaintiff has not adequately pled it. The "assumption of duty" doctrine applies only to "[o]ne who undertakes, gratuitously or for consideration, to render services to another . . . ." Restatement (Second) of Torts § 323 (1965). The Amended Complaint does not allege that Defendant undertook to render services to Plaintiff. To the contrary, it specifically alleges that after suffering a stroke off the ship on the way to a shore excursion in the Bahamas, he was taken back to the ship where the ship's physician told Plaintiff to disembark and seek medical attention at a medical facility in the Bahamas. (Am. Compl. ¶ 11.) Because the Amended Complaint does not allege that Defendant assumed a duty to render services to Plaintiff, the Court finds that Count VI fails to state a claim upon which relief can be granted. DeRoche, 46 Cal. Rptr. 2d at 471 ("We are unaware of any authority requiring a shipowner to ensure that a passenger, injured during a shore excursion, obtain better care than might be obtained locally, or indeed, obtain any care at all. To the contrary, it has been held that a shipowner incurs no liability because it declines to provide medical treatment to a passenger injured during a shore excursion, but leaves the passenger in the care of a local facility.") (citing Metzger, 1976 A.M.C. at 454-55).

g.     **Count XIX: Fraud**

Count XIX asserts a claim for fraud. (See Am. Compl. at 55.) Specifically, it alleges that Defendant fraudulently induced Plaintiff to go on the cruise by falsely

representing that if he purchased a traveler's insurance policy "Defendant would ensure that he would be adequately treated if he suffered a stroke, and that he would be flown back to the United States for medical treatment if he was unable to be treated on the ship." (Am. Compl. ¶ 355.)

Defendant argues that Plaintiff fails to plead Count XIX with the specificity required by Rule 9(b). (Mot. at 10.) Plaintiff argues that Count XIX adequately alerts Defendant to the precise misconduct with which it is charged. (Resp. at 11.)

"To state a claim for fraud under Florida law, a plaintiff must allege, '(1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth [or] falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment.'" Brown v. Oceania Cruises, Inc., CASE NO. 17-22645-CIV-ALTONAGA/Goodman, 2017 WL 10379580, at *5 (S.D. Fla. Nov. 20, 2017) (quoting Barrett v. Scutieri, 281 F. App'x 952, 953 (11th Cir. 2008)).

With respect to the first element, the Amended Complaint alleges that while booking Plaintiff's cruise over the phone, "Defendant, through an agent acting on its behalf and/or in the scope of the agent's employment, falsely represented the health care that would be available to him[.]" (D.E. 24 ¶¶ 354-55.) Specifically, the agent "said" that if Plaintiff's family purchased a traveler's insurance policy, "Defendant would ensure that he would be adequately treated if he suffered a stroke, and that he would be flown back to the United

States for medical treatment if he was unable to be treated on the ship." (Id. ¶ 355.)  As to

the second element, the Amended Complaint alleges that Defendant

> knew that this representation was false, and that Defendant was actually
> unable to ensure that Plaintiff would be promptly taken care of if he suffered
> another stroke, that it was unable to ensure that it would fly him back to the
> United States for medical treatment if he was unable to be treated on the ship,
> that he would instead more likely be at the mercy of a medical facility at the
> closest port-of-call, and that Defendant could not ensure that he would
> receive the medical treatment he needed at any such medical facility.

(Id. ¶ 356.)  As to the third element, the Amended Complaint alleges that "Defendant's

intended purpose and goal in perpetrating this scheme against Plaintiff, at all relevant times,

was to induce Plaintiff to cruise on its ships, as well as to sell him an insurance policy that

did not fulfil the purposes it lead him to believe it would fulfil, for financial gain, and to

the detriment of Plaintiff."  (Id. ¶ 359.)  As to the fourth element, the Amended Complaint

alleges that: (1) "[i]n reliance on these representations, Plaintiff decided to go on the subject

cruise and to purchase this traveler's insurance policy[,]" (id. ¶ 355); (2) "Plaintiff, at all

relevant times, justifiably relied on Defendant's false statement concerning the material

information in question[,]" (id. ¶ 361); (3) "Defendant's deliberate false assurances it made

to Plaintiff were material to his decision to go on the cruise[,]" (id. ¶ 362); and (4) "[h]ad

Defendant had not made these deliberate misrepresentations regarding these issues to the

74-year-old plaintiff, he would not have taken the cruise, and Plaintiff's injuries would not

have occurred, would have been substantially lessened, and/or would not have been

aggravated[,]" (id. ¶ 363).

 While the Amended Complaint pleads all of the elements of a fraud claim, it fails

to do so with the specificity required by Rule 9(b).  "Rule 9(b) is satisfied if the complaint

sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba, 256 F.3d at 1202.

Here, the Court is satisfied that the Amended Complaint adequately alleges precisely what oral representations were made, their content and the manner in which they misled Plaintiff, and what Defendant obtained as a consequence of the fraud. However, the Amended Complaint does not specifically allege the time and place of the statements and the person responsible for making them. The Amended Complaint vaguely alleges that "Defendant, through an agent acting on its behalf[,]" made the representations to someone "when his family was booking his cruise over the phone with an agent of Defendant[.]" (Am. Compl. ¶ 354-55.) This is inadequate. If Plaintiff wishes to reassert his fraud claim, he must specifically allege, at a minimum, who in his family made the telephone call, who the family member called to book the cruise (e.g., Carnival, a travel agent, someone else), and when this telephone call occurred.

## V.    Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Defendant Carnival Corporation's Renewed Motion to Dismiss (D.E. 26) is

      **GRANTED** consistent with this Order;

2.      Counts I, II, and V are **STRICKEN** as impermissible shotgun pleadings or, alternatively, **DISMISSED WITHOUT PREJUDICE** for failure to comply with federal pleading standards and/or failure to state a claim upon which relief can be granted;

3.      Counts III, IV, VI, and XIX are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted;

4.      Plaintiff shall have fourteen days from the date of this Order to file a Second Amended Complaint; and

5.      If Plaintiff chooses to file a Second Amended Complaint, **ALL** counts alleged therein shall be "short and plain," Fed. R. Civ. P. 8(a)(2), and be supported by "simple, concise, and direct" <u>factual</u> allegations, Fed. R. Civ. P. 8(d)(1), showing that the claim is "plausible on its face." <u>Sinaltrainal</u>, 578 F.3d at 1260 (citing <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 561-62, 570).

    **DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of February, 2020.

                                    *Joan A. Lenard*
                                    **JOAN A. LENARD**
                                    **UNITED STATES DISTRICT JUDGE**